# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| YESENIA FRANCO a/k/a YESENIA ROSE and KAFIL TUNSILL, | ) CASE NO.: 3:26-CV-146A-JEP-SSH ) ) TYPE OF CASE: Civil Action - Federal ) Question |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| LAURA VAN DE VELDE, (a/k/a Laura Hendrik Camille Van De Velde), and VANESSA GRISALES, and PERCAPITA LLC | ) ) ) ) ) ) ) |
| Defendants. | ) |

---

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

---

COME NOW the Plaintiffs, YESENIA FRANCO a/k/a YESENIA ROSE (hereinafter "Yesenia") and KAFIL TUNSILL (hereinafter "Mr. Tunsill"), appearing Pro Se, and sue the Defendants, LAURA VAN DE VELDE (a/k/a Laura Hendrik Camille Van De Velde), VANESSA GRISALES and PERCAPITA LLC (collectively, "Defendants"), and allege:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction), as Plaintiffs assert civil claims arising under the laws of the United States, specifically 18 U.S.C. § 1964(c) (Racketeer Influenced and Corrupt Organizations Act), 18 U.S.C. § 875(d) (Interstate Communications - Extortion), and 18 U.S.C. § 2261A(2)

1

(Cyberstalking).

2. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because the state law claims (Defamation Per Se, Civil Conspiracy, Intentional Infliction of Emotional Distress, Tortious Interference, and FDUTPA) form part of the same case or controversy as the federal claims and derive from a common nucleus of operative facts.

3. Venue is proper in the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Defendant Vanesa Grisales resides in and operates her business entity from Orange County, Florida, and the tortious acts, extortion, and publication of defamatory statements were directed from and occurred within this judicial district.

**PARTIES**

4. **Plaintiff Yesenia Franco** is a California resident and a public figure with an established audience of over 100,000 followers across multiple social media platforms. She holds a corporate position and is an active student member of the Association of Certified Fraud Examiners (ACFE). She operates an Instagram educational content platform and a separate Facebook page. Her address is filed under seal pursuant to the concurrently filed Motion to Seal, for the safety

reasons set forth therein. She may be contacted at the address provided to the Court under seal.

5. **Plaintiff Kafil Tunsill** is a resident of Jacksonville, Florida (Duval County), and Yesenia Franco's closest confidant and partner. His address is P.O. Box 364, Jacksonville, Florida 32201. He is an instructor whose professional activities were directly disrupted by Defendants' conduct as alleged herein.

6. **Defendant Laura Van de Velde** is a Belgian national currently residing in the State of Florida. Her current Florida address is unknown to Plaintiffs and is the subject of a pending subpoena to Meta Platforms, Inc. Her last known documented U.S. mailing address is 3350 Toledo Terrace, Apt. 404, Hyattsville, Maryland 20782, as reflected in U.S. government records (Exhibit I). She may be served through alternative service as authorized by the Court pursuant to Plaintiffs' concurrently filed Motion for Alternative Service.

7. **Defendant Vanessa Grisales** is an individual residing at 1938 Melvin Ave, Orlando, Florida 32806. She is the Registered Agent, Trustee, and sole member of PERCAPITA LLC, a Florida Limited Liability Company (Document No. L22000483193, FEI/EIN 92-1066740), which was ACTIVE at the time of all acts alleged herein, with its most recent Annual Report filed on April 29, 2026 — weeks before the extortion campaign commenced. She operates @infinitecurrent11 as her personal educational content platform on Instagram,

while separately marketing PERCAPITA LLC through her Facebook business page. She may be served at her registered address: 1938 Melvin Ave, Orlando, Florida 32806.

8. **Defendant PERCAPITA LLC** is a Florida Limited Liability Company (Document No. L22000483193), with its principal address at 777 N Orange Ave, Orlando, Florida 32801, and mailing address at 1938 Melvin Ave, Orlando, Florida 32806. It is jointly liable for all acts alleged herein as its sole owner, registered agent, and trustee — Defendant Vanessa Grisales — undertook the extortion and defamation campaign in furtherance of her personal financial arrangement with Co-Defendant Van de Velde, from which the LLC directly benefited. It may be served through its registered agent, Vanessa Grisales, at 1938 Melvin Ave, Orlando, Florida 32806.

.

## FACTUAL ALLEGATIONS

9. Plaintiffs' Educational Background and Good-Faith Disclaimers: Plaintiff Yesenia Franco and Co-Plaintiff Kafil Tunsill independently studied and explored status correction ideology as researchers and educators. Defendant Grisales was one of many individuals who publicly promoted this same ideology — she was not Plaintiffs' teacher or mentor, but a peer operating in the same space who commercially sold related course materials to paying customers. As students and researchers under the first amendment, Plaintiffs

4

consistently disclosed in every communication, email, and public platform that they were not licensed attorneys, that nothing they shared constituted legal, medical, or financial advice, and that all content was strictly educational in nature. This disclaimer appeared in every email Yesenia sent, including all communications with Defendant Van de Velde.

10. October 2025 — Prior Contractual Obligations of Defendant Van de Velde: On October 17, 2025, at 6:57 AM — two months prior to the donation at issue — Defendant Van de Velde signed and returned via email a Hold Harmless and Indemnity Agreement and a Notice of Non-Disclosure and Private Agreement (collectively, the 'October NDA') with Yesenia. In the Hold Harmless Agreement, Van de Velde explicitly agreed to hold Yesenia harmless from 'any and all charges, claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, summonses, lawsuits, costs, loss, fines, liens, levies, penalties, damages, interests, and expenses.' In the NDA, she agreed that all materials, recordings, documents, and information shared are 'private, proprietary, and not for public distribution' and that she would not 'record, copy, forward, disclose, or reproduce any part of this communication without prior written consent.' This signed agreement is preserved and will be submitted as **Exhibit D.**

11. December 2025 — Defendant Van de Velde's Voluntary Donation: On

December 17, 2025, Defendant Laura Van de Velde made a voluntary transfer of $7,000.00 to Yesenia. In documented, written email communications, Defendant Van de Velde explicitly referred to this transfer as a "donation" three times: once in the subject line of her own email, which reads "Donation for the mentorship," and twice in the body, stating verbatim: "I would like to donate for the mentorship we discussed" and "I just wanted to confirm if cashapp is how you would like to receive the donation." These exact written admissions eliminate any factual dispute regarding the voluntary nature of the funds. This documentary evidence is preserved and will be submitted as **Exhibit A.**

12. The nature of this payment as a voluntary donation — and not a refundable service contract — is conclusively established by Defendant Van de Velde's own written communications. In her email dated December 17, 2025, subject line 'Donation for the mentorship,' Van de Velde wrote: 'I would like to donate for the mentorship we discussed' and 'I just wanted to confirm if cashapp is how you would like to receive the donation?' — using the word 'donation' twice in a single email, unprompted and in her own words. The same email reveals that Van de Velde's expectations were consistent with a mentorship relationship, not a deliverable service contract: she expressed excitement about receiving guidance on trust structures, status correction, and passport matters — all of which are

educational in nature and do not carry a contractual completion date or refund obligation. Furthermore, Plaintiff Franco performed substantial research in furtherance of this mentorship, including over ten hours of document review, research, analysis, and structural template preparation — time that was further disrupted by Van de Velde's repeated cancellations of scheduled sessions. Plaintiff Franco expressly notified Van de Velde in writing that donations are non-refundable, and that even if the payment were characterized as a service fee, the hourly value of work already performed exceeded the amount paid. This email exchange is preserved as **Exhibit A** and constitutes direct, documentary proof that Van de Velde herself characterized the payment as a donation and received substantial mentorship services in exchange.

13. Defendant Van de Velde has attempted to recharacterize the voluntary donation as a service payment. This post-hoc recharacterization is directly contradicted by six independent pieces of documented evidence: **(1)** the subject line of her own email, which reads 'Donation for the mentorship'; **(2)** her use of the words 'donate' and 'donation' three times in the body of that email; **(3)** her use of Plaintiff's gift and contribution link rather than a service invoice; **(4)** the absence of any signed service agreement, scope of work, or agreed price; **(5)** the Mutual Confidential Settlement Agreement drafted by Yesenia, which states the funds were 'a voluntary, unconditional Donation' —

terms Van de Velde accepted in writing; and **(6)** Van de Velde's own written admission in subsequent communications: *'You can see I wrote I would like to donate for the membership we discussed.'*

14. January–February 2026 — Phase One: Pre-Existing Animosity of Defendant Grisales: Prior to any dispute regarding the donation, Defendant Grisales had already published personal attacks against Plaintiffs on her Instagram platform *(@infinitecurrent11, approximately 17,000 followers)*. On January 31, 2026 and February 4, 2026, Grisales published posts targeting Yesenia as *"insecure"* and making derogatory statements about Co-Plaintiff Kafil Tunsill. These posts establish Grisales' pre-existing personal animosity toward Plaintiffs and demonstrate that Defendant Van de Velde deliberately chose Grisales as her instrument knowing this history.

15. Defendant Grisales' Prior Business Relationship with Plaintiff and Pattern of Deceptive Conduct: On or about February 17, 2025, Plaintiff paid Defendant Grisales $150.00 in exchange for access to course materials, recordings, and private class videos related to status correction ideology. Defendant Grisales represented that she had purchased this course content from a third party for approximately $3,000.00 and was reselling it to paying customers for profit. Defendant Grisales operated a private Telegram group through which she sold and distributed these materials to multiple paying individuals. Upon

information and belief, Defendant Grisales did not hold a license, assignment, or other authorization from the original course creator to reproduce or resell this content for commercial gain, making her Telegram resale operation an unauthorized commercial distribution scheme in violation of the Copyright Act (17 U.S.C. § 501) and constituting a deceptive trade practice under FDUTPA (Fla. Stat. § 501.204). Upon information and belief, Defendant Grisales has deleted the Telegram chat history and may have blocked Plaintiff or deleted the Telegram account entirely, which constitutes additional evidence of spoliation and consciousness of guilt.

16. March 2026 — Plaintiff's Good-Faith Content Removal and Pivot to Fraud Education: Upon discovering the fraudulent nature of certain status correction schemes — aided by her professional membership in the Association of Certified Fraud Examiners (ACFE) — Plaintiff acted with absolute integrity. In March 2026, Plaintiff began systematically removing all status correction content from her platform, publicly acknowledged she had been deceived, and pivoted her platform to actively educating her 100,000+ followers about how to recognize and avoid these exact schemes.

17. March 2026 — Defendant Van de Velde's Refund Demand and UPL Threat: Defendant Van de Velde's formal demand for the return of her November donation occurred on or about March 19, 2026 — after Plaintiff had already

provided the benefit of her ongoing mentorship and educational content. The mentorship was not a fixed-scope service with a defined deliverable, but an ongoing educational relationship in which Plaintiff shared her research, studies, and evolving understanding of the subject matter. Plaintiff's pivot to fraud examination — including her enrollment as a student member of the Association of Certified Fraud Examiners (ACFE) and her public disclosure that the status correction ideology was fraudulent — was not a departure from the mentorship but a direct and natural continuation of it. Plaintiff followed the evidence with integrity and continued educating her audience. Defendant Van de Velde's refund demand reflects not a failure of delivery, but her dissatisfaction with the direction of Plaintiff's research — specifically, that Plaintiff's findings threatened to expose the very ideology Van de Velde had disclosed she intended to use to evade family court jurisdiction in her custody matter. On or about March 22, 2026, Defendant Van de Velde threatened to report Yesenia for 'practicing law without a license' (Unauthorized Practice of Law, or UPL) as a coercive tactic. This threat is entirely without merit and was made in bad faith given the explicit educational disclaimers Van de Velde had received, acknowledged, and signed.

18. Plaintiff's enrollment as a student member of the Association of Certified

Fraud Examiners (ACFE) and her public identification of the status correction ideology as a fraudulent scheme constitute protected whistleblower activity under federal law, including the Dodd-Frank Act (15 U.S.C. § 78u-6) to the extent the schemes involve securities fraud, the IRS Whistleblower Program (26 U.S.C. § 7623) to the extent of the 1099-OID and 1099-A schemes constitute tax fraud, and common law whistleblower protections for reporting fraud to the public. Defendants coordinated campaign of extortion, defamation, and cyberstalking was undertaken in direct retaliation for that protected activity against a fraud whistleblower. Retaliation against a whistleblower is itself an independent legal wrong and constitutes an additional predicate act supporting the RICO pattern alleged herein.

19. March 2026 — Good-Faith Settlement Attempt and Laura's Refusal: Acting in absolute good faith, Yesenia agreed to a settlement proposed by Defendant Van de Velde to return half of the donation ($3,500.00). Defendant Van de Velde accepted these terms but then maliciously refused to sign the standard Mutual Confidential Settlement Agreement (NDA) necessary to effectuate the return, deliberately choosing instead to orchestrate a public smear campaign.

20. March–May 2026 — The Conspiracy Forms and the NDA is Breached: Defendant Van de Velde deliberately sought out Defendant Vanesa Grisales — an individual she knew harbored documented pre-existing personal

animosity toward Plaintiffs — and privately fed her a fabricated narrative of 'theft.' Laura's deliberate selection of Grisales as her instrument demonstrates the calculated and premeditated nature of the conspiracy. In doing so, Van de Velde breached the October NDA she had signed, which expressly prohibited disclosure of any information from their private communications without written consent. This private disclosure to Grisales constitutes both a breach of contract and the foundational overt act of the civil conspiracy. Notably, Defendant Van de Velde's Instagram account, formerly operating under the handle *@fromburnouttobank*, has since been renamed to *@singlemominherenergy* and set to private. This account change constitutes evidence of consciousness of guilt and an attempt to distance herself from the events described herein.

21. May–June 2026 — Phase Two: Weaponized Defamation and Extortion Campaign: Following Defendant Van de Velde's private disclosure of the fabricated theft narrative, Defendant Grisales escalated to a coordinated defamation and extortion campaign. On May 31, 2026 (one post) and June 1, 2026 (two separate posts — three total), Grisales published false, defamatory, extortive, and threatening statements targeting both Plaintiffs to her 17,000 followers.

22. Documented Evidence of Extortion and Digital Ransom — Three Separate

Acts: Defendant Grisales published three separate, direct, public written threats demanding money under threat of continued reputational harm, each constituting an independent act of extortion under 18 U.S.C. § 875(d). In the first post (May 31, 2026), Grisales wrote: *"If you want your operation to continue without unnecessary problems, then be a big girl and do the right thing. Nobody needs your actions, your specifics, or this situation becoming public with the details."* In the second post (June 1, 2026), Grisales issued an explicit blackmail demand: ***"NOW IF SHE GIVES MY FRIEND THE THOUSANDSSSSS & I MEAN THOUSANDS OF DOLLARS SHE STOLE & PROVIDED ZEROOOO SERVICES FOR, I WONT POST HER STUPID ASS FRAUDULENT ACTIONS."*** In a subsequent comment on her own post, Grisales confirmed the quid pro quo: *"That's the opportunity I'm giving her so she can return the THOUSANDS she took from my friend. If she can do that, her business stays hers. I'm putting her on notice."* These statements are preserved in screenshots with timestamps and engagement metrics and will be submitted as **Exhibit B.**

23. These demands were wrongful and extortionate because Grisales had no legal right to demand funds on Van de Velde's behalf, was not a party to any agreement between Plaintiffs and Van de Velde, and used the threat of continued reputational destruction as leverage to force payment of a

fabricated debt. A third party with no legal relationship to the underlying transactions who makes financial demands backed by threats of harm constitutes extortion, not debt collection.

24. Documented Evidence of Defamation Per Se and Actual Malice: Defendants published posts falsely accusing Yesenia of being a "thief," a "crackhead," and a "ho." Specifically, Grisales wrote: *"That bitch is a crackhead. You can tell her I said it,"* and *"Stay off the crack. Purple lips don't suit you."* In a direct admission of actual malice, Grisales subsequently stated in writing: *"And the whole thing about the drugs is an opinion I don't wish to explain."* This constitutes written proof that Grisales made the drug accusations knowing they were not factual, satisfying the actual malice standard under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its Florida progeny. These statements are preserved as **Exhibit C.**

25. Third-Party Defamatory Statements Ratified and Republished by Defendant Grisales: Defendant Grisales actively participated in the comment section of her posts, responding to dozens of comments, endorsing defamatory statements, and failing to correct false criminal accusations made by third parties. Under Florida law, a publisher who endorses or ratifies third-party defamatory statements is liable for their republication. Specifically: **(a)** When commenter *@eternalintox* accused Plaintiff of *"targeting the Hispanic*

*community and posing as an attorney,*" Grisales responded: *"GTFOOOO. Oh HELL NAHHHH"* — an explicit endorsement of the false accusation of unauthorized practice of law; **(b)** When commenter *@daringdave3* accused Plaintiff of being a *"disinformation agent,"* Grisales responded: *"haha that's good to know"* — an explicit endorsement; **(c)** Commenter *@thebookofjohnson* publicly accused Plaintiff of *"aggravated identity theft, extortion conspiring, racketeering, false advertisement, embezzlement, tax evasion, misappropriation of funds, breach of fiduciary duties"* — receiving 10 likes — while Grisales continued to actively participate in the thread without correction; **(d)** Commenter *@louchurnovic* publicly stated that Plaintiff and her partner *"sell drugs"* and are *"still involved with murders"* — receiving 9 likes — while Grisales continued to actively participate in the thread without correction. Each of these third-party statements, ratified by Grisales, constitutes an independent act of defamation per se for which Defendants are jointly and severally liable.

26. Documented Evidence of Incitement, Cyberstalking, and Credible Threats of Violence: Defendants published threatening media, including Tupac Shakur tracks ("Crack Rock" and "Makaveli · Hail Mary") directed at and tagged to Yesenia. Grisales also publicly offered to recruit third parties to assist in the harassment campaign, stating: *"I might. Depends on what she decides to do."*

On June 1, 2026, Defendant Grisales published a second post in the form of a video reel using a *"talking Earth"* visual filter, in which her face was superimposed on a 3D rotating globe. The verbatim audio transcript of this video states in relevant part: *"So when I spoke to the Lord and he asked me, 'Earth, what is going on down there?' I said, 'Lord, honestly, I don't even know anymore.' There's just so much going on — I've got volcanoes, I've got solar flares, I got ice trying to control everybody, I've got AI trying to ruin everything, and men with podcasts diagnosing women they can't afford — but now women allegedly in private circles stealing money from people and no services, providing absolutely nothing. Lord said, 'Nothing?' I said, 'Nothing. Not even a worksheet or a fake PDF or a recycled guru template that no longer works.' So, you know, I just got to say this, honey, listen here, okay. You know, return that woman's money — because you know, that woman that posted about you? I would try it carefully because that is a Colombian Aquarius with receipts, rage, contractor lungs, and screenshots and a spiritual gift for making people regret being weird. Let me tell you something else. The last time officers tried to handle her, it took five of them and a taser — and probably a lunch break after."* The caption of this reel reads verbatim: *"Oh where, oh where did the refund go? Oh where, oh where can it be? Somewhere between 'I'm a healer' and 'please stop exposing*

*meeee'"* The reel received 40 likes, 16 comments, and 4 shares, confirming widespread public dissemination. This post constitutes: (1) a third explicit extortion demand — *"return that woman's money"* — published to 17,000+ followers; (2) a false accusation of theft — *"stealing money from people and no services, providing absolutely nothing"* — directed at Plaintiff by unmistakable description; (3) a credible threat of physical violence under 18 U.S.C. § 875(c) — Defendant Grisales invoking her own history of requiring five law enforcement officers and a taser to subdue as an explicit warning to Plaintiff; and (4) an additional act of defamation per se. This post was published after Plaintiff had already filed reports with the Local Police Department, the Orlando Police Department, and the FBI Internet Crime Complaint Center, demonstrating willful continuation of the campaign with full knowledge of law enforcement involvement.

27. Defendant Grisales' Promotion of Federal Fraud Schemes and Ideological Connection to Defendant Van de Velde: Defendant Grisales publicly promotes a range of sovereign citizen and tax fraud schemes on her Instagram account (*@infinitecurrent11*) to her audience of over 17,000 followers, including: (1) "credit pulling and claiming" schemes involving the filing of false IRS Forms 1099-OID and 1099-A to fabricate fictitious tax credits and discharge debts — a federally prosecutable offense under 26 U.S.C. § 7206 and 18 U.S.C. §

1341; (2) CUSIP-based securities fraud schemes falsely claiming that individuals hold secret government bond accounts accessible through securities identifiers — constituting wire fraud and securities fraud under 18 U.S.C. §§ 1343 and 1348; and (3) the filing of false liens against sitting judges and government officials — a federal crime under 18 U.S.C. § 1521 and a tactic specifically classified by the FBI's Domestic Terrorism Operations Unit as a sovereign citizen extremist tactic. These are active federal criminal schemes that the IRS, SEC, and FBI investigate and prosecute. Plaintiff is an active student member of the Association of Certified Fraud Examiners (ACFE) who had publicly identified and begun exposing these exact schemes. Therefore, the extortion campaign was not merely a personal dispute — it was a coordinated effort to silence an emerging whistleblower before she could cause regulatory harm to the Defendants' ideological and financial interests. This is the precise ideological framework that Defendant Van de Velde disclosed she intended to use to remove a U.S. family court's jurisdiction over her custody matter. The shared ideological community between Defendants Grisales and Van de Velde provides direct evidence of their pre-existing relationship and the basis for their coordinated conspiracy against Plaintiff. Defendant Grisales' promotion of these federally prosecutable schemes to her followers while simultaneously weaponizing

the legal system as an extortion tool against Plaintiff demonstrates profound bad faith and deliberate hypocrisy. Her accusations are made with actual knowledge of their falsity, for competitive and financial gain, and with deliberate malice.

28. Pattern of Conduct — Ongoing Extortion Enterprise: Defendant Grisales has admitted that the campaign against Plaintiff is not an isolated incident but part of an ongoing pattern of targeted public exposure campaigns. When commenter *@believe_inspire3* requested that Grisales "do this for all these thieving fools" and "put them all on blast," Grisales replied: *"absolutely! If you got gurus out here taking your money on false pretenses and you have proof... I'll be happy to."* This admission establishes that Defendant Grisales operates a recurring pattern of using her 17,000-follower platform as an instrument of coercion and public humiliation against individuals she targets, which satisfies the 'pattern of racketeering activity' element of 18 U.S.C. § 1962(c).

29. Permanent Dissemination and Viral Amplification: Defendant Grisales did not merely publish the defamatory content; she affirmatively designed it to be permanently downloadable and saveable by third parties. By enabling and encouraging her audience to download the content, Defendant Grisales created a distribution infrastructure intended to ensure the defamatory

statements would survive any future deletion or takedown order. Each subsequent download, share, and republication by a third party constitutes a separate act of defamation for which Defendants are the proximate cause. Because Defendant Grisales possesses an audience of over 17,000 followers, and because social media algorithms actively amplify highly engaging content, the foreseeable viral reach of this campaign extends to hundreds of thousands of individuals across multiple platforms. Instagram's own search algorithm has indexed the defamatory content, as evidenced by the search bar in multiple screenshots showing *Infinite Current debt collection*" as a suggested search term, ensuring that anyone searching for Plaintiff's business will encounter the defamatory content. This deliberate act of permanent dissemination eliminates any mitigation defense, proves premeditated actual malice, and has caused irreversible, permanent, and unquantifiable reputational damage to Plaintiffs.

30. On June 3, 2026, Instagram/Meta removed Defendant Grisales's defamatory post –the one containing the explicit extortion demand and the 'Stay off the crack. Purple lips don't suit you' drug accusation –pursuant to its own Community Standards enforcement. This platform-level removal constitutes independent, third-party corroboration that the content was harmful and violative. Rather than accepting Instagram's determination, Defendant Grisales immediately reposted

the identical content with the caption 'Instagram is out here working overtime,' demonstrating full knowledge that her content was harmful and a deliberate, willful decision to republish it anyway. This act of republication after a platform-enforced removal constitutes a separate and independent act of defmation, extortion, and cyberstalking , and eliminates any possible defense of innocent mistake or lack of knowledge of harm. Furthermore, Grisales actively endorsed third-party comments apmplyfing the defamatory drug narrative – including hearting a comment from *@ministerofequity* celebrating the harassment as "Effective!!" –and endorsed attempts to pressure Instagram to reverse its removal decision. At least on third party, *@azynaffit84*, publicly stated in the comments: 'Glad I didn't send any funds there myself' –constituting documented, third-party-confirmed tortious interference with Plaintiff's prospective mentee relations. A separate commenter, *@supr3m3_850*, confirmed that multiple posts were removed by Instagram, establishing a pattern of repeated platform violations. A further commenter characterized Plaintiff's as federal informants, escalating the physical safety threat to Plaintiff's family and their minor children. These screenshots are preserved as **Exhibit H.**

31. Irreparable Business Harm and Emotional Distress: The sustained, coordinated campaign has caused Plaintiff Yesenia irreparable harm to her business and professional reputation. Plaintiff has lost numerous members,

followers, and prospective clients directly due to the ongoing dissemination of these defamatory statements. Because money damages cannot fully restore a destroyed reputation or recover lost trust, this harm is irreparable and necessitates immediate injunctive relief. Furthermore, the campaign has caused Plaintiffs severe physical, emotional, and mental harm, including physical symptoms manifesting from sustained anxiety and fear, emotional distress, and mental anguish. Yesenia's children, family, and friends have been independently harmed by the public nature of this campaign.

32. Refusal to Submit to Extortion and Preservation of Federal Claims: Despite the coordinated digital ransom campaign, Plaintiff Yesenia has resolutely refused to submit to Defendants' extortionate demands to return the voluntary $7,000.00 donation. This refusal is both legally correct and strategically essential: returning the funds under the explicit threat of continued public exposure would constitute capitulating to an illegal extortion scheme under 18 U.S.C. § 875(d), would implicitly concede that the voluntary donation was a payment for services (which is factually false), and would prejudice Plaintiffs' federal RICO and extortion claims. Because of this refusal, and because Defendants have actively incited their audience of over 17,000 followers, Plaintiffs have a credible and imminent fear of physical violence, property destruction, and continued retaliation. Defendant Grisales'

publication of Tupac Shakur's "Makaveli · Hail Mary" — a track famously associated with violent retribution — directed at Plaintiff, combined with her public offer to recruit third parties, has caused Plaintiffs to fear for the safety of their children, their homes, their vehicles, their pets, and their extended family. Plaintiffs are in the process of filing formal reports with law enforcement regarding these threats.

33. Defendant Van de Velde's Immigration Status and Motive to Silence Plaintiff: During their private mentorship sessions, Defendant Van de Velde disclosed highly sensitive personal information to Plaintiff Yesenia Franco, including that she was engaged in a custody dispute with her child's father and her intent to use "status correction" ideology to improperly remove the family court's jurisdiction over her custody matter. Defendant Van de Velde also shared her federal immigration file with Plaintiff, which confirms she is not a U.S. citizen, but rather a Belgian national who entered the U.S. on a student visa and applied for a status adjustment (USCIS Form I-485). Plaintiff possesses a copy of Defendant Van de Velde's I-485 application, which confirms she is a Blegian national born in 1983. The document, including Defendant's passport number and full date of birth, will be filed with the Court under seal and is available upon request. Plaintiff will not attach this document to the public complaint to protect Defendant Van de Velde's

Personally Identifiable Information (PII). Because Plaintiff possesses direct knowledge of Defendant Van de Velde's intent to evade family court jurisdiction, Defendant Van de Velde has a powerful motive to silence, discredit, and destroy Plaintiff's reputation to prevent Plaintiff from serving as an adverse witness or exposing her conduct. This motive directly fueled the extortion and defamation campaign orchestrated by Van de Velde and executed by Grisales.

## CAUSE OF ACTION

### COUNT I: VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (CIVIL RICO), 18 U.S.C. § 1962(c) and (d)

### (By Plaintiff Yesenia against Both Defendants)

34. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

35. Defendants Van de Velde and Grisales formed an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4). The Enterprise was formed for the common purpose of extorting money from Plaintiff and destroying her business and reputation through a coordinated campaign of digital harassment, defamation, and extortion.

36. The Enterprise engaged in and its activities affected interstate commerce, as Defendants utilized the internet, social media platforms (Instagram), and interstate wire communications to conduct their activities.

37. Defendants conducted or participated in the conduct of the Enterprise's

24

affairs through a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1) and (5), consisting of multiple predicate acts, including but not limited to: (a) Three separate acts of Extortion in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 875(d), corresponding to the three posts published on May 31 and June 1, 2026; and (b) Wire Fraud in violation of 18 U.S.C. § 1343.

38. These predicate acts were related, had similar purposes, results, participants, and victims, and constituted a continuing threat of racketeering activity. The campaign spanned from January 2026 through June 2026 and involved multiple, separate publications of extortionate demands and defamatory statements. Defendant Grisales has admitted to operating an ongoing pattern of such campaigns, further establishing the 'pattern' element. The pattern was not an isolated incident but an ongoing, coordinated camagin involving at least three separate extortionate demands made on different posts, coupled with the ongoing cyberstalking and publication of defamatory material.

39. As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(c) and their conspiracy to violate § 1962(c) in violation of § 1962(d), Plaintiff Yesenia has been injured in her business and property, including but not limited to lost income, damage to her professional reputation, and loss of prospective economic advantage.

40. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold the damages she sustained, and the cost of the suit, including a reasonable attorney's fee.

## COUNT II: INTERSTATE COMMUNICATIONS - EXTORTION (18 U.S.C. § 875(d))
### (By Plaintiff Yesenia against Both Defendants)

41. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

42. Defendants, acting in concert, transmitted in interstate commerce three separate communications containing threats to injure the property or reputation of Plaintiff Yesenia, with the intent to extort money or other things of value, in violation of 18 U.S.C. § 875(d).

43. The first act of extortion (May 31, 2026): Grisales published: *"If you want your operation to continue without unnecessary problems, then be a big girl and do the right thing. Nobody needs your actions, your specifics, or this situation becoming public with the details."* The second act of extortion (June 1, 2026): Grisales published: *"NOW IF SHE GIVES MY FRIEND THE THOUSANDSSSSS... I WONT POST HER STUPID ASS FRAUDULENT ACTIONS."* The third act of extortion (June 1, 2026, comment): Grisales stated: *"If she can do that, her business stays hers."* Each of these three communications constitutes an independent violation of 18 U.S.C. § 875(d).

44. Defendant Van de Velde aided, abetted, and conspired with Defendant Grisales in making these extortionate interstate communications by

supplying the fabricated theft narrative that formed the basis of the threats.

45. As a direct and proximate result, Plaintiff Yesenia has suffered significant damages.

### COUNT III: FEDERAL CYBERSTALKING (18 U.S.C. § 2261A(2))

### (By Both Plaintiffs against Both Defendants)

46. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

47. Defendants, with the specific intent to harass and intimidate Plaintiffs, used an interactive computer service or electronic communication system of interstate commerce to engage in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to Plaintiffs.

48. Defendants' course of conduct caused Plaintiffs to suffer substantial emotional distress that significantly disrupted their daily lives, impaired their ability to work, forced the cancellation of mentorship classes, and caused profound anxiety for their physical safety and the safety of their family & children –satisfying the 'substantial emotional distress' standard required under 18 U.S.C. § 2261A.

49. Defendants' coordinated, multi-month campaign of posting defamatory, threatening, and inciting content directed at Plaintiffs, including tagging Plaintiff Yesenia and posting content associated with violent retribution,

constitutes a course of conduct under the statute.

50. As a direct and proximate result, Plaintiffs have suffered and continue to suffer substantial emotional distress, mental anguish, and fear for their safety.

### COUNT IV: DEFAMATION PER SE (State Law Claim)
### (By Plaintiff Yesenia against Both Defendants)

51. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

52. Defendants published false statements of fact to third parties, explicitly accusing Yesenia of committing severe crimes (theft, racketeering, identity theft, unauthorized practice of law) and having a socially unacceptable condition (drug addiction/"crackhead").

53. Under Florida law, falsely accusing a person of a crime or drug addiction constitutes defamation per se. *See Montgomery v. Knox*, 23 Fla. 595 (1887); *Lawnwood Medical Ctr. v. Sadow*, 43 So.3d 710 (Fla. 4th DCA 2010). Because the statements are defamatory per se, malice is presumed, and damages are presumed to exist as a matter of law without the need for proof of special damages.

54. The Defendants' statements were made with actual malice –meaning published with knowledge of their falsity or reckless disregard for the truth, as conclusively established by Defendant Grisales' own written admission: *"And the whole thing about the drugs is an opinion I don't wish to explain."*

This admission proves that Grisales made the drug accusations knowing they were not factual, satisfying the actual malice standard under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). The Defendants' statements were calculated, premeditated, and designed to destroy Yesenia's educational platform, commercial reputation, corporate employment, and standing as a mother.

55. Defendant Grisales is further liable for the third-party defamatory statements she ratified and republished, as detailed in Paragraph 18, including the false accusations of unauthorized practice of law and involvement in murders. Each ratified statement constitutes an independent act of defamation per se.

## COUNT V: DEFAMATION AND DEFAMATION BY IMPLICATION (State Law Claim)

### (By Plaintiff Kafil Tunsill against Both Defendants)

56. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

57. Defendants published false statements to third parties implying or stating that Yesenia had committed harmful acts against Mr. Tunsill, and otherwise defamed his character in connection with the smear campaign.

58. Florida recognizes the tort of defamation by implication. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098 (Fla. 2008). The juxtaposition of facts and false statements by Defendants created a defamatory implication regarding Mr.

Tunsill, causing him severe reputational harm, public humiliation, and emotional distress. Multiple commenters mocked Mr. Tunsill by name, and commenter *@fgm.jah* publicly stated that Plaintiff *"ruined Kalif Tunsil,"* which Grisales allowed to stand without correction.

59. Defendant Grisales posts directly identified Co-Plaintiff Tunsill by name and by implication, exposing him to public hatred, contempt, and ridicule, and constituting defamation per se under Florida Law.

### COUNT VI: CIVIL CONSPIRACY (State Law Claim)
### (By Both Plaintiffs against Both Defendants)

60. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

61. Defendants Van de Velde and Grisales entered into an agreement to accomplish an unlawful act — specifically, the extortion, defamation, and cyberstalking of Plaintiffs.

62. This agreement is evidenced by Van de Velde disclosing confidential information and fabricated claims about Plainitffs to Grisales –information that only Van de Velde possessed –who then acted as the publication arm of the conspiracy. The specificity of the information Grisales published, which could only have come from Van de Velde, is direct circumstantial evidence of the agreement between them.

63. Defendants committed numerous overt acts in furtherance of this conspiracy, including Van de Velde supplying fabricated information and Grisales

30

weaponizing her 17,000-follower personal Instagram educational platform to execute the digital ransom campaign, while deliberately keeping the content off her formal PERCAPITA LLC Facebook page –evidencing premeditation and consciousness of guilt.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (State Law Claim)

### (By Both Plaintiffs against Both Defendants)

64. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

65. The Defendants' conduct — specifically the coordinated digital ransom, the publication of criminal threats inciting violence, and the targeted attacks on Yesenia's fitness as a mother — was intentional, reckless, and malicious.

66. This conduct is extreme, outrageous, and goes beyond all possible bounds of decency, making it atrocious and utterly intolerable in a civilized community.

67. As a direct and proximate result of Defendants' outrageous conduct, both Yesenia and Mr. Tunsill have suffered severe emotional distress, mental anguish, and physical harm manifesting from sustained anxiety and fear. Yesenia's children, family, and friends have been independently harmed.

68. Mr.Tunsill as Yesenia's closest confidant, we have been forced to manage the relentless fallout of this extortion campaign, causing such sever disruption to Mr.Tunsill life, that he was forced to cancel his educational classes on multiple occasions. His mentees are available to testify to these cancellations,

31

which represent concrete professional and financial harm directly caused by Defendants' actions.

## COUNT VIII: TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS (State Law Claim)

### (By Plaintiff Yesenia against Both Defendants)

69. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

70. Yesenia possesses advantageous business relationships through her corporate employment and her public platform of over 100,000 followers. Defendants had knowledge of these relationships.

71. Defendants intentionally and unjustifiably interfered with these relationships by publishing false accusations of theft and drug use to Yesenia's audience and professional sphere. Instagram's search algorithm has indexed the defamatory content, as evidenced by the search bar in multiple screenshots showing "Infinite Current debt collection" (also in violation of FDCPA) as a suggested search term, ensuring that anyone searching for Plaintiff's business will encounter the defamatory content.

72. Defendant Grisales operates a competing public educational platform **(@infinitecurrent11 on instagram)** promoting status correction ideology — content that Plaintiff Franco also shared as part of her educational platform — as well as 1099-OID and 1099-A schemes that Plaintiff was actively and thoroughly investigating at the time. It was during that investigative process that Plaintiff

determined the 1099 schemes constituted fraud, causing her to pivot from study to public exposure and whistleblowing rather than teaching the content. Defendant Grisales, who actively promotes and profits from these same 1099 schemes, therefore had a direct and powerful financial motive to silence Plaintiff: Plaintiff's public fraud exposure threatened the commercial viability of Grisales's entire educational platform and the revenue stream of PERCAPITA LLC.

73. Her participation in this extortion campaign was not merely as a proxy for Van de Velde, but was driven by pre-existing competitive animus and personal disdain for Plaintiff Yesenia. Prior to this campaign, Grisales published videos specifically targeting Yesenia by name, state: 'I saw that you blocked me, girl... you want to run your mouth and try to undermine, because I'm the only one talking about the tax court... Did I hit a nerve... why continue to talk shit when I'm going to come back at you, bitch?' These prior videos, preserved as **Exhibit F**, establish that Grisales harbored actual malice and a pre-existing motive to destroy Yesenia's platform long before the $7,000 dispute arose. When Van de Velde approached Grisales, she was not a neutral third party –she was a willing weapon with a pre-loaded personal grudge.

74. As a direct result, Yesenia has suffered measurable damage to her prospective economic advantage and professional standing.

## COUNT IX: BREACH OF CONTRACT, HOLD HARMLESS AGREEMENT, AND NON-DISCLOSURE AGREEMENT (State Law Claim)

### (By Plaintiff Yesenia against Defendant Van de Velde)

75. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

76. On October 17, 2025, Defendant Van de Velde entered into a binding Hold Harmless and Indemnity Agreement and Non-Disclosure Agreement with Yesenia. These agreements were supported by valuable consideration and are enforceable contracts under state law. The October NDA and Hold Harmless Agreement satisfy all four elements of a valid contract under Florida law: Yesenia offered the agreements, Van de Velde accepted by signing and returning them via email on October 17, 2025, valuable consideration was exchanged in the form of mutual obligations and the ongoing mentorship relationship, and the essential terms — including the scope of confidentiality and the hold harmless obligation — were clearly specified. See *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

77. Each of the following acts constitutes a material breach — one that goes to the essence of the contract. See *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. 1st DCA 2003)Defendant Van de Velde materially breached both agreements by: (1) privately disclosing confidential information from her communications with Yesenia to Defendant Grisales and others without

written consent, in direct violation of the NDA; (2) initiating, facilitating, and encouraging a campaign of defamation, harassment, and extortion against Yesenia, in direct violation of the Hold Harmless Agreement in which she agreed to hold Yesenia harmless from all claims, legal actions, and damages; and (3) threatening Yesenia with legal action for UPL, in further violation of the Hold Harmless Agreement.

78. As a direct and proximate result of Van de Velde's breach, Yesenia has suffered significant damages including reputational harm, emotional distress, physical harm, and economic losses. These damages constitute both general damages — those naturally and necessarily flowing from the breach, see Hutchison v. Tompkins, 259 So. 2d 129 (Fla. 1972) — and foreseeable consequential damages, including lost business income and reputational harm, which were reasonably foreseeable at the time Van de Velde signed the agreements, given that Yesenia's platform and professional reputation were the express subject matter of the mentorship relationship. See *Hardwick Properties, Inc. v. Newbern*, 711 So. 2d 35, 40 (Fla. 1st DCA 1998).

79. Grisales's defamation and extortion campaign was a direct and foreseeable consequence of Van de Velde's NDA breach. Under Florida law, a defendant is liable for the foreseeable consequences of her breach even where those consequences involve the independent acts of a third party, provided the

third party's conduct was a foreseeable result of the breach. See *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992); *Gibson v. Avis Rent-A-Car System, Inc.*, 386 So. 2d 520, 522 (Fla. 1980). Van de Velde knew — or reasonably should have known — that disclosing Yesenia's confidential communications to Grisales, who had already demonstrated personal animosity toward Yesenia (see ¶14), would foreseeably result in a campaign of harm. Furthermore, Van de Velde's breach of the Hold Harmless Agreement — in which she agreed to hold Yesenia harmless from 'any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, and expenses' — independently obligates her to indemnify Yesenia for all damages flowing from the campaign she set in motion. See *Law v. Law*, 299 So. 3d 505 (Fla. 3d DCA 2020) (hold harmless provisions require indemnitor to compensate for all losses flowing from the designated peril).

### COUNT X: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) (State Law Claim)
### (By Plaintiff Yesenia against Defendant Grisales)

80. Plaintiffs re-allege and incorporate paragraphs 1 through 33.

81. Defendant Grisales operates PERCAPITA LLC (Document No. L22000483193, FEI/EIN 92-1066740), a Florida Limited Liability Company filed on November 10, 2022, which holds an ACTIVE status with the Florida Division of Corporations as of the date of this filing, with its most recent Annual

Report filed on April 29, 2026 –weeks before the extortion campaign commenced. Grisales serves as both Registered Agent and Trustee of PERCAPITA LLC, with a registered address of 1938 Melvin Ave, Orlando, Florida 32806. The extortionate and defamatory posts were made through Grisales's commercial platform and in furtherance of PERCAPITA LLC's business activities, rendering the LLC jointly liable for all acts alleged herein. Marketing a business platform to over 17,000 followers while engaging in extortion and defamation in the course of that business constitutes a deceptive and unfair trade practice under Florida Statute § 501.204.

82. Defendant Grisales further engaged in deceptive trade practices by operating a private Telegram group through which she commercially sold course materials, recordings, and private class videos that she did not own and had no license to resell. Plaintiff paid Defendant Grisales $150.00 on or about February 17, 2025 for access to these materials. Upon information and belief, this unauthorized reproduction and commercial resale of copyrighted content to multiple paying consumers constitutes an additional deceptive trade practice under FDUTPA. Plaintiff reserves the right to amend this count upon recovery of documentary evidence through discovery, including a subpoena to Telegram for records of the group and its membership.

83. Grisales utilized her personal Instagram educational platform

*(@infinitecurrent11)* to falsely accuse Yesenia of fraud while simultaneously operating a deceptive entity (PERCAPITA LLC, marketed through her separate Facebook page) and an unauthorized content resale scheme herself, demonstrating bad faith and unclean hands. The deliberate separation of the defamatory posts from her formal Facebook page further evidences her consciousness of guilt and premeditation.

## DAMAGES AND PRAYER FOR RELIEF

Plaintiffs are entitled to compensatory, punitive, and statutory damages, including mandatory treble damages under 18 U.S.C. § 1964(c), for a total demand of no less than $14,500,000, plus uncapped punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

A. Compensatory Damages ($3,000,000.00): For reputational harm to Plaintiff Franco's established 100,000+ follower platform, loss of corporate employment opportunities, damage to Plaintiff Franco's ACFE membership and professional career, lost consulting clients and mentee donations & business income (including the client evidenced by the @azynaffit84 comment), economic losses to Plaintiff Tunsill arising from the cancellation of his June 1 and June 3, 2026 classes and rescheduled consultation calls, disruption to the Al-Iman Ministry, and severe emotional distress suffered by both Plaintiffs, in an amount to be proven at trial, but reasonably estimated

$3,000,000.00.

B. Presumed Damages for Defamation Per Se ($500,000.00): Based on the viral amplification, multi-platform reach, permanent downloadable nature of the defamatory statements, and the algorithmic indexing of the defamatory content by Instagram's search engine, Plaintiffs demand presumed damages of $500,000.00.

C. Punitive Damages (Uncapped — Amount to be Determined by Jury): Due to the malicious, premeditated, and egregious nature of the extortion, cyberstalking, and permanent dissemination of defamation per se, Plaintiffs seek punitive damages to punish and deter Defendants. Because Defendants acted with a specific intent to harm Plaintiffs, there is no statutory cap on punitive damages pursuant to Florida Statute § 768.73(1)(c). Plaintiffs seek punitive damages in an amount to be determined by the jury, but in no event less than **$2,500,000.00**, in addition to the $14,500,000.00 total demand.

D. Treble Damages under Civil RICO ($9,000,000.00): Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to mandatory treble damages –three times the compensatory damages sustained to business and property. Based on compensatory damages of $3,000,000.00, Plaintiffs seek treble damages in the amount of $9,000,000.00. Additional Statutory and General Damages ($2,500,000.00): For violations of 18 U.S.C. § 2261A (Cyberstalking), Defamation Per Se, Tortious Interference with Business Relations, Civil

Conspiracy, and Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.204), Plaintiffs seek additional statutory and general damages in the amount of **$2,500,000.00.**

E. Injunctive Relief and Mandatory Retraction: A Temporary Restraining Order (TRO) and Permanent Injunction ordering Defendants to immediately delete all defamatory posts, cease any further publication of false statements, affirmatively contact all known recipients to demand deletion of downloaded content, and post a mandatory public retraction on all platforms where the defamation was published.

F. Attorneys' Fees and Costs: Award of all costs of this action and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), FDUTPA, and other applicable statutes.

G. Other Relief: Such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

_Yesenia Franco_
YESENIA FRANCO
Plaintiff, Pro Se
Address: FILED UNDER SEAL — Motion to Seal Filed Concurrently
yeseniafranco07@yahoo.com

_Kafil Tunsill_
KAFIL TUNSILL
Plaintiff, Pro Se
P.O. Box 364
Jacksonville, Florida 32201
(904) 576-8981
Servinghumanity89@gmail.com

6/4/2026

# EXHIBITS ATTACHED:

**Exhibit A** — Written communications from Defendant Van de Velde using the word "donation" to describe the $7,000 payment

**Exhibit B** — Screenshots of Defendant Grisales's Instagram posts containing extortionate demands, with timestamps and engagement metrics

**Exhibit C** — Screenshots of Defendants' defamatory statements, including the "thief" and "crackhead" accusations and Grisales's admission that the drug accusation was fabricated and associated commments

**Exhibit D** — Signed Non-Disclosure and Hold Harmless Agreement between Plaintiff Yesenia Franco and Defendant Van de Velde

**Exhibit E** — Written declaration by Plaintiff Kafil Tunsill regarding cancelled professional classes.

**Exhibit F** — Transcripts of prior video posts by Defendant Grisales targeting Plaintiff Yesenia by name, and associated comments establishing pre-existing disdain and actual malice

**Exhibit G** — Florida Division of Corporations records for PERCAPITA LLC (Document No.L22000483193) confirming ACTIVE status and Grisales as Registered Agent

**Exhibit H** — Evidence of Instagram removing @infinitecurrent11 post because it violated community standards.

**Exhbit I** — U.S. Mailing Address for Laura Van De Velde

# VERIFICATION

STATE OF FLORIDA / STATE OF CALIFORNIA
COUNTY OF DUVAL / COUNTY OF SAN MATEO

We, YESENIA FRANCO and KAFIL TUNSILL, being duly sworn and under penalty of perjury pursuant to 28 U.S.C. § 1746, hereby declare and state as follows:

1.  We are the Plaintiffs in the above-captioned action and have personal knowledge of the facts set forth in the foregoing Verified Complaint.

2.  We have read the foregoing Complaint and know the contents thereof.

3.  The allegations contained in the Complaint are true and correct to the best of our knowledge, information, and belief.

4.  The exhibits attached hereto are true and accurate copies of the original documents and screenshots described therein.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _**June 4th**_, 2026

_____
YESENIA FRANCO
Plaintiff, Pro Se
Address: FILED UNDER SEAL
Mailing: P.O. Box 364, Jacksonville, FL 32201
yeseniafranco07@yahoo.com

_____
KAFIL TUNSILL
Plaintiff, Pro Se
P.O. Box 364
Jacksonville, FL 32201
servinghumanity89@gmail.com